# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| MICHAEL W. WISE, | ) | |
|    Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:11cv00006 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **REPORT AND RECOMMENDATION** |
|   Commissioner of Social Security, | ) | |
|    Defendant | ) | BY: Pamela Meade Sargent |
| | ) | United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Michael W. Wise, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), determining that he was not eligible for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423, 1381 *et seq.* (West 2003 & Supp. 2011). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as

"evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Wise protectively filed his applications for DIB and SSI on April 16, 2008, alleging disability as of October 19, 2007, due to anxiety, depression, panic disorder, phobias and knee pain. (Record, ("R."), at 116-19, 138, 142.) The claims were denied initially and on reconsideration. (R. at 56-58, 64, 65-67, 69-75.) Wise then requested a hearing before an administrative law judge, ("ALJ"). (R. at 76.) A hearing was held on April 7, 2010, at which Wise was represented by counsel. (R. at 23-51.)

By decision dated April 29, 2010, the ALJ denied Wise's claims. (R. at 12-22.) The ALJ found that Wise meets the nondisability insured status requirements of the Act for DIB purposes through December 31, 2012. (R. at 14.) The ALJ also found that Wise had not engaged in substantial gainful activity since October 19, 2007, the alleged onset date. (R. at 14.) The ALJ determined that the medical evidence established that Wise had severe impairments, namely major depressive disorder, generalized anxiety disorder/social anxiety and panic disorder, but he found that Wise's impairments did not meet or medically equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 15.) The ALJ also found that Wise had the residual functional capacity to perform a full range of work at all exertional levels that did not require interaction with the public

and only superficial interaction with co-workers and supervisors. (R. 16-17.) The ALJ found that Wise was unable to perform his past relevant work as a self-employed construction laborer and institutional cleaner. (R. at 20.) Based on Wise's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that jobs existed in significant numbers in the national economy that he could perform, including jobs as a hand packer, an industrial cleaner, a machine feeder and a cleaner/housekeeper, all at the medium[1] and light[2] levels of exertion. (R. at 20-21.) Thus, the ALJ found that Wise was not under a disability as defined under the Act and was not eligible for benefits. (R. at 22.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2011).

After the ALJ issued his decision, Wise pursued his administrative appeals, (R. at 8), but the Appeals Council denied his request for review. (R. at 1-6.) Wise then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2011). The case is before this court on Wise's motion for summary judgment filed June 7, 2011, and the Commissioner's motion for summary judgment filed July 6, 2011.

---

[1] Medium work involves lifting objects weighing up to 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If an individual can do medium work, he also can do sedentary and light work. *See* 20 C.F.R. §§ 404.1567(c), 416.967(c) (2011).

[2] Light work involves lifting objects weighing up to 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. If an individual can do light work, he also can do sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2011).

## II. Facts

Wise was born in 1977, (R. at 27, 116), which classifies him as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). He has a high school education and past relevant work as a carpenter and a housekeeper. (R. at 27-28, 146, 152.)

Michael Gore, a vocational expert, was present and testified at Wise's hearing. (R. at 39-40, 44-50.) Gore classified Wise's past work as a self-employed subcontractor as heavy,[3] semi-skilled work and his work as an institutional cleaner as heavy, unskilled work. (R. at 44.) Gore was asked to assume a hypothetical individual of Wise's age, education and work experience and who had the residual functional capacity to perform unskilled work that included the ability to understand, remember and carry out simple instructions, to respond appropriately to supervision, co-workers and usual work situations and to deal with changes in a routine work setting on a sustained basis. (R. at 44-45.) He stated that such an individual could not perform Wise's past work as a construction worker, but that he could perform his past work as a cleaner. (R. at 45.) Gore was asked to assume the same individual, but who could have no interaction with the public and only superficial interaction with co-workers and supervisors. (R. at 45.) He stated that such an individual could not perform Wise's past work as a cleaner in a nursing home. (R. 45-46.) Gore stated that there were other jobs that existed in significant numbers that such an individual could perform, including jobs as a hand packager,

---

[3] Heavy work involves lifting objects weighing up to 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, he also can do medium, light and sedentary work. *See* 20 C.F.R. §§ 404.1567(d), 416.967(d) (2011).

a janitor, a cleaner and a machine feeder. (R. at 46.)

In rendering his decision, the ALJ reviewed records from Bill McFeature, Ph.D., a psychologist; Cathy Shadden, F.N.P., a family nurse practitioner; E. Hugh Tenison, Ph.D., a state agency psychologist; and Howard S. Leizer, Ph.D., a state agency psychologist. Wise's attorney also submitted medical records from McFeature to the Appeals Council.[4]

On February 15, 2008, Cathy Shadden, F.N.P., a family nurse practitioner, saw Wise for complaints of anxiety and depression. (R. at 204-06.) Wise reported nervousness, mood swings and panic attacks. (R. at 204.) Shadden reported that Wise was alert and oriented, had a pleasant mood and had normal eye contact. (R. at 205.) She diagnosed anxiety state, not otherwise specified, and depressive disorder, not elsewhere classified. (R. at 205.) Shadden referred Wise to Bill McFeature, Ph.D., a psychologist, and prescribed Paxil. (R. at 205.)

On March 3, 2008, McFeature reported that Wise presented with an anxious affect and passive speech. (R. at 202.) Wise reported that he was nervous all of the time, he did not like being around crowds and that he was withdrawn from others. (R. at 202.) McFeature diagnosed anxiety state, not otherwise specified. (R. at 202.) On March 17, 2008, Wise reported that he was anxious a lot, withdrawn from people and socially inept. (R. at 200.) McFeature diagnosed an adjustment disorder

---

[4] Since the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 1-6), this court also should consider this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.,* 953 F.2d 93, 96 (4th Cir. 1991).

with mixed emotional features. (R. at 200.) McFeature reported that, "I believe patient is seeking disability, age 31, quit job last year due to receiving an audible from God, states wife affirmed this, strong religiosity and fundamentalism, … not delusional or psychotic…." (R. at 200.) On April 1, 2008, Wise's wife reported that she had noticed an improvement in Wise's mood. (R. at 197.) Shadden reported that Wise was alert and oriented, his mood was pleasant and he had normal eye contact. (R. at 198.) That same day, McFeature noted that he discussed with Wise that he was too young to file for disability. (R. at 195.) McFeature reported that Wise appeared mildly depressed. (R. at 195.) On May 5, 2008, Wise reported significant anxiety as a result of the death of his grandfather and dealing with his mother-in-law being hospitalized for a heart attack. (R. at 193.) Wise stated that he was doing fair in coping with his then-present stressors. (R. at 193.) On May 27, 2008, Wise reported that he was seeking disability. (R. at 191.) Wise also reported that he was tolerating his medication well. (R. at 191.) McFeature reported that he did not deem Wise's condition disabling. (R. at 191.) McFeature diagnosed generalized anxiety disorder. (R. at 191.)

On July 8, 2008, Wise reported that he was dealing with anxiety and that he would become withdrawn and isolated at times. (R. at 241.) He reported that he could not work. (R. at 241.) McFeature reported that "[p]atient has a mind set that he [can't] work and he is disabled, difficult patient in terms of being a good candidate for talk therapy …." (R. at 241.) McFeature noted that Wise had a supportive spouse who was disabled with a mood disorder. (R. at 241.) McFeature diagnosed generalized anxiety disorder and panic disorder with agoraphobia and mild panic attacks, not otherwise specified. (R. at 241.) On August 11, 2008, Wise reported that his medication was helpful. (R. at 236.) He reported that he was

-6-

dealing with significant anxiety and would become withdrawn. (R. at 236.) McFeature diagnosed generalized anxiety disorder. (R. at 236.) On September 10, 2008, McFeature diagnosed generalized anxiety disorder. (R. at 249.) On October 1, 2008, McFeature noted that Wise believed that he was disabled, and McFeature believed that an "underlying agenda and rationale" drove Wise toward this process. (R. at 285.) McFeature diagnosed generalized anxiety disorder. (R. at 285.) On December 16, 2008, McFeature reported that Wise's anxiety was mild. (R. at 288.) Wise reported that he was compliant with medication and that his medication helped with his symptoms. (R. at 288.) On December 30, 2008, no particular stressors were noted. (R. at 289.) Wise reported that he was coping well. (R. at 289.)

On January 13, 2009, McFeature diagnosed social anxiety disorder, depressive disorder, not otherwise specified, and panic attacks. (R. at 290.) On January 15, 2009, McFeature completed a mental questionnaire indicating that Wise's then-current Global Assessment of Functioning score, ("GAF"),[5] was 55-60[6] and that his highest GAF score over the past year was 65.[7] (R. at 279-83.)

McFeature also completed a mental assessment indicating that Wise had a

---

[5] The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994).

[6] A GAF score of 51-60 indicates that the individual has "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning ...." DSM-IV at 32.

[7] A GAF score of 61-70 indicates that the individual has "[s]ome mild symptoms … OR some difficulty in social, occupational, or school functioning …, but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 32.

Case 1:11-cv-00006-JPJ-PMS   Document 16   Filed 01/06/12   Page 7 of 17   Pageid#: 398

very good ability to adhere to basic standards of neatness and cleanliness. (R. at 281-83.) He reported that Wise had a limited, but satisfactory, ability to understand, remember and carry out very short and simple instructions; to maintain attention for two-hour segments; to make simple work-related decisions; to ask simple questions or request assistance; and to be aware of normal hazards and take appropriate precautions. (R. at 281.) He reported that Wise had a seriously limited, but not precluded, ability to remember work-like procedures; to maintain regular attendance and be punctual within customary, usually strict tolerances; to sustain an ordinary routine without special supervision; to work in coordination with or proximity to others without being unduly distracted; to complete a normal workday and workweek without interruptions from psychologically based symptoms; to perform at a consistent pace without an unreasonable number and length of rest periods; to accept instructions and respond appropriately to criticism from supervisors; to get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; to respond appropriately to changes in a routine work setting; to understand, remember and carry out detailed instructions; to set realistic goals or make plans independently of others; to deal with stress of semi-skilled or skilled work; to interact appropriately with the general public; to travel in unfamiliar places; and to use public transportation. (R. at 281-82.)

On January 28, 2009, McFeature reported that Wise appeared to be "coping fair." (R. at 295.) McFeature diagnosed social anxiety disorder. (R. at 295.) On February 26, 2009, Wise reported moderate anxiety. (R. at 300.) McFeature diagnosed generalized anxiety disorder and reported that Wise's coping ability was fair to good. (R. at 300.) On March 16, 2009, McFeature diagnosed social anxiety disorder and reported that Wise's coping ability was fair to good. (R. at 301.) On

-8-

March 30, 2009, Wise reported having mild panic attacks. (R. at 304.) He reported that his uncle had passed away and that he would be attending the funeral that day. (R. at 304.) On April 15, 2009, Wise reported that he had attempted to get out of the house more often. (R. at 305.) His ability to cope was reported as fair. (R. at 305.) On May 28, 2009, Wise reported a decrease in panic episodes. (R. at 309.) McFeature reported that Wise's social anxiety was debilitating in nature. (R. at 309.) On August 10, 2009, Wise reported having difficulty getting out of the house at times, but that he was working out and being health conscious, which had helped with his anxiety symptoms. (R. at 315.) On October 2, 2009, Wise reported that he was doing better with managing his symptoms of anxiety. (R. at 317.) On November 6, 2009, McFeature reported that Wise's coping ability was fair to good. (R. at 324.) On November 25, 2009, Wise noted some improvement with his symptoms. (R. at 325.) On March 9, 2010, Wise reported that he was doing fair. (R. at 334.) McFeature noted that Wise's mood symptoms were managed. (R. at 334.)

On July 20, 2010, McFeature completed a mental assessment indicating that Wise had a limited, but satisfactory, ability to maintain personal appearance. (R. at 336-37.) He reported that Wise had a seriously limited, but not precluded, ability to follow work rules, to understand, remember and carry out simple instructions, to behave in an emotionally stable manner and to relate predictably in social situations. (R. at 336-37.) He reported that Wise had no useful ability to relate to co-workers, to deal with the public, to use judgment, to interact with supervisors, to deal with work stresses, to function independently, to maintain attention/concentration, to understand, remember and carry out complex and detailed instructions and to demonstrate reliability. (R. at 336-37.) He based these

-9-

findings on a diagnosis of severe generalized anxiety disorder. (R. at 336-37.)

On July 30, 2008, E. Hugh Tenison, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), indicating that Wise suffered from an affective disorder and anxiety-related disorder. (R. at 213-25.) Tenison reported that Wise had a mild restriction of activities of daily living and moderate limitations on his ability to maintain social functioning and to maintain concentration, persistence or pace. (R. at 223.) He reported that Wise had not experienced any episodes of decompensation. (R. at 223.)

Tenison also completed a mental assessment indicating that Wise was not significantly limited in his ability to remember locations and work-like procedures, to understand, remember and carry out very short and simple instructions, to sustain an ordinary routine without special supervision, to get along with co-workers or peers without distracting them or exhibiting behavioral extremes and to be aware of normal hazards and take appropriate precautions. (R. at 226-27.) He indicated that Wise was moderately limited in his ability to understand, remember and carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; to work in coordination with or proximity to others without being distracted by them; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to ask simple questions or request assistance; to accept instructions and respond appropriately to criticism from supervisors; to maintain socially appropriate

behavior and to adhere to basic standards of neatness and cleanliness; to respond appropriately to changes in the work setting; to travel in unfamiliar places or use public transportation; and to set realistic goals or make plans independently of others. (R. at 226-27.) Tenison reported that Wise could perform the basic mental demands of competitive work on a sustained basis. (R. at 228.)

On November 19, 2008, Howard S. Leizer, Ph.D., a state agency psychologist, completed a PRTF indicating that Wise suffered from an affective disorder and an anxiety-related disorder. (R. at 258-71.) Leizer reported that Wise had a mild restriction of activities of daily living and moderate limitations on his ability to maintain social functioning and to maintain concentration, persistence or pace. (R. at 268.) He reported that Wise had not experienced any episodes of decompensation. (R. at 268.)

Leizer also completed a mental assessment indicating that Wise was not significantly limited in his ability to remember locations and work-like procedures; to understand, remember and carry out very short and simple instructions, to sustain an ordinary routine without special supervision, to get along with co-workers or peers without distracting them or exhibiting behavioral extremes and to be aware of normal hazards and take appropriate precautions. (R. at 272-74.) He indicated that Wise was moderately limited in his ability to understand, remember and carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; to work in coordination with or proximity to others without being distracted by them; to complete a normal workday and workweek without interruptions from psychologically based

symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to ask simple questions or request assistance; to accept instructions and respond appropriately to criticism from supervisors; to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; to respond appropriately to changes in the work setting; to travel in unfamiliar places or use public transportation; and to set realistic goals or make plans independently of others. (R. at 272-73.) Leizer reported that Wise could perform the basic mental demands of competitive work on a sustained basis. (R. at 274.)

### III. Analysis

The Commissioner uses a five-step process in evaluating SSI and DIB claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2011); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2011).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the

Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2011); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

Wise argues that the ALJ erred by failing to give proper weight to the opinion of his treating psychologist McFeature. (Plaintiff's Brief In Support Of Motion For Summary Judgment, ("Plaintiff's Brief" at 5-9.) Wise does not contend that the ALJ erred in his physical residual functional capacity finding.

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays*, 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir.

-13-

1975).  Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. §§ 404.1527(d), 416.927(d), if he sufficiently explains his rationale and if the record supports his findings.

Wise argues that the ALJ erred by rejecting the opinion of his treating psychologist. (Plaintiff's Brief at 5-9.) Based on my review of the record, I disagree. A treating physician's opinion is entitled to controlling weight when it is well-supported by the medical evidence of record, and consistent with any other evidence of record. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2011). In this case, the ALJ evaluated the opinion of McFeature, determined the limitations cited were not consistent with the other substantial evidence of record, including McFeature's own treatment notes, and declined to give his opinion controlling weight. (R. at 19.)

The ALJ noted that McFeature's mental assessment was inconsistent with his own treatment notes, which showed continuous improvement in Wise's condition. (R. at 18-20.) Treatment notes show that Wise, and his spouse, reported that medication improved Wise's symptoms. (R. at 197, 236, 288, 325.) "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986). In fact, at the final visit on record, in March 2010, McFeature considered Wise's anxiety to be "managed." (R. at 334.) In addition, McFeature noted that he had discussed with Wise his belief that Wise was too young to file for disability, and in May 2008

-14-

noted that he did not deem Wise's condition disabling. (R. at 191, 195.) In October 2008, McFeature noted that Wise believed that he was disabled. (R. at 285.) McFeature noted that he believed that Wise had an "underlying agenda and rationale." (R. at 285.) Furthermore, the minimal mental status findings noted by McFeature and the GAF scores he assigned also conflict with his opinion. Throughout the three-year treatment period, McFeature noted minimal, if any, mental status findings. On only one occasion, McFeature noted that Wise appeared to be "mildly depressed." (R. at 195.) On another occasion, he observed Wise to be in "good spirits." (R. at 326.) McFeature reported no other mental status findings nor did he suggest Wise had mental work-related limitations in any of his treatment notes. (R. at 191-203, 236-42, 249-57, 284-327, 334.) McFeature assigned Wise a GAF score of 55-60, with his highest GAF score being 65, indicating only mild to moderate symptoms or limitations. (R. at 279.)

Similarly, the evidence from Wise's treating nurse practitioner, Shadden, also contradicted McFeature's opinion. Shadden noted at every visit from 2007 through 2009 that Wise had a pleasant mood; made normal eye contact; was alert and oriented; and had unremarkable speech and hygiene. (R. at 18, 291, 306, 312, 319.) McFeature's opinion of disability also conflicted with the opinions of two state agency psychologists who concluded that Wise had no more than moderate limitations and could meet the basic mental demands of competitive work on a sustained basis despite his impairments. (R. 213-28, 258-74.)

Based on the above, I find that substantial evidence exists to support the ALJ's weighing of the medical evidence in determining Wise's mental residual functional capacity.

-15-

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence exists to support the Commissioner's weighing of the medical evidence;

2. Substantial evidence exists to support the Commissioner's mental residual functional capacity finding; and

3. Substantial evidence exists to support the Commissioner's finding that Wise was not disabled under the Act and was not entitled to DIB or SSI benefits.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Wise's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the Commissioner's decision denying benefits.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C) (West 2006 & Supp. 2011):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed

findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: January 6, 2012.

s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE